WILLIAM NEVISON *et al.* Exceptants, *v.* JAMES TAYLOR, Administrator of ELLEN TAYLOR, deceased, Accountant.

## ON CERTIORARI TO THE ORPHANS' COURT OF MONMOUTH.

1. J. T. by his last will bequeaths as follows:—"I give unto my wife (Ellen) all the use of my personal estate during her natural life, except, &c. Then, I give unto my son, James, after my wife Ellen's decease, all the remaining part of my personal estate that is left undisposed of. Then, my will further is, that if my son, James, should come to die before he arrives to the age of twenty-one years, *or* have lawful issue, then it is my will that all my estate, both real and personal, be continued in the hands of my beloved wife, Ellen, during her natural life, and after her decease to be disposed of in the following manner." Then he gives to his brother, George Taylor's son, James Taylor, certain real estate, &c., charged with certain legacies, and then says: "Item. I give unto my brother Taylor's children all the remaining of my personal estate, after my wife's decease, to be equally divided among them, boys and girls, share and share alike." After the death of the testator, Ellen, the widow, took into her possession the personal estate. James, the son, arrived at the age of twenty-one years, and soon after died without leaving lawful issue of his body, then the widow died. Under this will James, the son, took the personal estate, subject to the use of Ellen, his mother, during her natural life, and subject to an executory disposition thereof, over to the children of George, *if he,* James, *should come to die before he attained the age of twenty-one years, and before he had lawful issue of his body,* and though James, the son, did die without lawful issue of his body, yet as he did not die before he attained the age of twenty-one years, the double contingency never did happen so that the property became absolute in James the son, at his death it went to his mother, and on her death to the next of kin.

2. The word *or* in a will may be construed to mean *and,* to effectuate the intention of the testator.

———

KIRKPATRICK, C. J. James Taylor, by his last will, bequeaths as follows: "*I give unto my wife* (Ellen) *all the use of my personal estate during her natural life, except,*" &c. Then, "*I give unto my son, James, after my wife Ellen's decease, all the remaining part of my personal estate that is left undisposed of.*" Then, "*My will further is, that*

*if my son, James, should come to die before he arrives to the age of twenty-one years, or have lawful issue of his body, then it is my will that all my estate, both real and personal, be continued in the hands of my beloved wife, Ellen, during her natural life, and after her decease to be disposed of in the following manner.*" Then he gives to his brother George Taylor's son, James Taylor, certain real estate, &c., charged with certain legacies. And then he says, "*Item. I give unto my brother George Taylor's children all the remaining of my personal estate after my wife's decease, to be equally divided among them, boys and girls, share and share alike.*"

After the death of the testator, Ellen, the widow, took into her possession and to her use the personal estate under the bequest in this will.

James, the son, arrived to the age of twenty-one years, and soon after died without having lawful issue of his body. Then the widow also died, and James Taylor, the son of the testator's brother George, and the accountant in this case, administered upon her estate. In settling the account of this administration he claims allowance for $1,566.26, being the net amount of the personal estate of James Taylor, the testator, which came to the hands of the said Ellen, as appears by the settlement of that estate in the Orphans' Court. He claims this as belonging to the children of George Taylor, of whom he is one, under the bequest in the will last above recited; and it is allowed to him by the said court.

To bring into review the decision of that court, as to this item, is the object of this certiorari.

It is easy to perceive, I think, that the claim is irregularly allowed even if the children of George were entitled to this balance under the will of James Taylor. This accountant is not the executor of that will; nor has he any authority to execute it, or to pay legacies under it, or to judge who is entitled in the law to receive the balance. If they had a legal claim against him at all, and he had paid that claim,

he ought to have taken credit by regular vouchers, as for any other debts. But he cannot retain, nor can he claim allowance, until the demand is actually paid. Upon a settlement in the Orphans' Court, the judges are to look to the appropriation of every cent. They are to see that it is applied according to law, and not to set up the administrator himself to be the judge of the matter.

But in the view that I take of the case, it is not necessary further to investigate the formality of this proceeding, for I am of opinion that these children of George do not take under this bequest in the will at all, upon the events that have taken place.

James Taylor, the testator, had but one son; he gives him all his personal estate, but says, *if he come to die before he arrives to the age of twenty-one years, or have lawful issue of his body,* then it is to go over to these children of his brother George.

Taking these words in their strict and literal sense, if this son had died before the age of twenty-one, leaving a son born in lawful wedlock, the estate must have gone over to these children; for the son had not died without lawful issue, yet he had died before the age of twenty-one, and in either case the estate must have gone over. Now it is impossible to suppose that, in such a state of things, the testator intended to take away the property from his grandson, the only descendant and hope of his family, and give it over to these distant and collateral relations. It would be an outrage not only upon common sense, but upon all the feelings of nature, and all the principles of human action. It is evidently a mere mistake of the testator in expressing what he must certainly have intended. And it is a mistake so common, and I may say almost so universal, that the courts of justice have thought themselves bound to establish a peculiar rule of construction to provide against it. They have, for this purpose, established it as a principle that they have authority, and from time immemorial they have exer-

cised the authority of construing OR, in these limitations over, to mean AND, in order to carry into effect the manifest and rational intention of the testator. And if there ever was a case which justified and indeed demanded such construction, I think this is one. Retaining the word OR, the limitation over leads us into the grossest absurdity; an absurdity to which no rational man could ever intentionally yield; on the other hand, construing the word OR to mean AND, as we always do in cases of this kind, the plain and reasonable intention of the testator is carried into effect. The widow is provided for, the personal estate is given to the son, but it is given to him subject to this limitation, that if he die before he attain the age of twenty-one AND without issue, then it is to go over to those children; and this is a good limitation in the nature of an executory devise, to take effect upon a certain contingency which must happen, if at all, within a reasonable time, that is before James the son arrives to the age of twenty-one years; and so all the bequests in the will are perfectly reasonable, and consistent with one another.

It is true that, upon this construction, the contingency on which this executory disposition over to the children of George was to take effect, never did happen; and therefore that this estate so limited never did go over, but has taken another course which the testator did not foresee, and probably would not have approved. But this is no argument against the construction. A will is not to be construed according to future contingencies, but according to the true meaning appearing upon the face of it at the death of the testator. Contingencies not contemplated cannot be provided against. Man sees but a short way into futurity; a single event, unforeseen, deranges all his plans; and teaches us that man, with all his wisdom, *toils for heirs he knows not who.*

Upon the whole, therefore, I am of opinion, as before stated, that upon the true construction of this will, and upon

the events that have taken place, James, the son, took this estate upon the death of the testator, subject to the use of Ellen his mother during her natural life, and subject to an executory disposition to the children of George, "*if he*" James "*should come to die before he attained the age of twenty-one years,* AND *before he had lawful issue of his body,*" that, though James the son did die without lawful issue of his body, yet as he did not die before he attained the age of twenty-one years, the double contingency, upon which the executory disposition was to take effect, never did happen, and so that the property became absolute in James the son, and the children of George took nothing; that upon the death of James intestate and without issue, his personal property, of which this balance was a part, went to his mother Ellen as his next of kin; and that, therefore, this balance must constitute a part of her personal estate, and must be distributed according to the statute of distributions.

In my opinion, therefore, the judgment of the Orphans' Court as to this item must be reversed and set aside, and the accountant must be charged with the amount thereof.

FORD, J.—James Taylor, in his last will and testament, bequeathed as follows:—"I give to my wife Ellen the use of my personal estate during her natural life;—after her decease, I give to my son James all the remaining part of my personal estate that is left undisposed of; and my will is, that if James should come to die before he arrives to the age of *twenty-one years*, or have lawful *issue of his body,*" then the testator gave the personal estate to the children of his *brother*, George Taylor.

James, the testator's *son*, lived till *above the age of twenty-one*, and then died without issue. The question is, whether the estate went over in this case to the children of George Taylor? It is argued that it was to go over to the *nephews*, according to the language of the will, if *either* of the contingent events therein mentioned came to pass; that is, if

James the son died under age, *or* without issue ; that *both* are not required to happen, in order to carry the estate over, because the testator uses the word *or*, which means, that it shall go over on the happening of *either event.* And this argument is good for conveying the estate to the nephews if we look only to the import of the word *or ;* but on looking at the whole of the will, as it is our duty to do, it is manifest that the testator did not intend that the estate should go over on the happening of *either* of those events. Suppose the son had died *under* age, but had left lawful issue, did the testator mean to disinherit his son's issue in favor of his nephews ? A provision that the nephews shall take on condition that the son dies without issue, clearly imports that the nephews *shall not take* if he leaves issue. An unguarded word shall not defeat the plain intention of a testator. His intention manifestly was that *both events* should come to pass before the nephews should take ; or in other words, that his son James should die under age *and* without issue. The word *or*, may be construed to mean *and*, in order to effectuate the intent of a testator, and the cases are numerous to this effect. It was so done in this court, 2 *South.* 420, and was conformable to 2 *Atk.* 645 ; 1 *P. Wms.* 434 ; 3 *Ter.* 470, and many others.

Now on the son's attaining the age of *twenty-one,* both these events could not by possibility happen ; from that time the limitation over was defeated and the estate in James became absolute. At his death it went by the statute of distributions to his *mother* as next of kin ; and on her death to her next of kin who are the Nevisons. Hence the decree of the Orphans' Court so far as it reserves this property for the children of George Taylor, is erroneous.